Flagler Finance Corporation and North American Realty Co., *et al.,* v. J. H. Therrell, as Liquidator of Trust Company of Florida, as Trustee, and Roscoe Martin, as Substitute Trustee.

159 So. 868.

Division A.

Opinion Filed March 2, 1934.

On Rehearing January 24, 1935.

*Loftin, Stokes & Calkins,* for Appellants;

*Richard H. Hunt,* for Appellee, Roscoe Martin.

ELLIS, J.—This is the third time this case has been before the Supreme Court. See Sammons v. Trust Co. of Florida, 102 Fla. 711, 136 South. Rep. 442; same case, 105 Fla. 547, 141 South. Rep. 743.

On the 4th day of August, 1932, notice of a master's sale of the property pursuant to the final decree of fore-

closure was filed. The notice stated that the sale would be made on September 5th following.

On the 3rd day of September another notice was filed that the sale would be made on October 3, 1932. The first notice was entitled Trust Company of Florida, as Trustee, v. A. L. Sammons, *et al.;* the second notice was entitled J. H. Therrell, as Liquidator of Trust Company of Florida, as Trustee, v. A. L. Sammons, *et al.* Proof of publication of the first notice appears in the transcript. That notice was dated August 6th, but seems to have been filed on the 4th. It appears a second time in the transcript immediately following proof of its publication.

The Master made a report of the sale on September 6th, in which it was stated that pursuant to the "final decree" and as set forth in the advertisement of sale he offered for sale "at public outcry" the property mentioned in the decree. The notice of sale stated that the sale would be made "at public outcry to the highest and best bidder for cash."

The report of the sale does not state that the property was sold to the "highest and best bidder for cash," but it states that the property was sold to J. H. Therrell, as Liquidator of the Trust Company of Florida, "for the sum of $12,000.00, the same being the highest bid therefor."

The Flagler Finance Corporation and North American Realty Company, the former being one of the appellants in the first two appeals, objected to the Master's report of the sale on the ground that it stated that the Master had sold the property "Together with * * * all fixtures, furnishings and furniture located in the building or buildings situated on said land"; that he should have reported that he "did not sell any of the property located in said building except such as already belonged to A. L. Sammons and

wife at the time of the execution of the mortgage and/or that was purchased thereafter by them and placed in said building; that the Master did not report that he received cash for the sale or in what manner the plaintiff purchaser intends to pay for the property; that the North American Realty Company is the owner of seven of the bonds secured by the mortgage foreclosed of the par value of Thirty-seven Hundred Dollars, and "demands the right to have its pro rata share of the proceeds arising from the said sale distributed to it in cash before the sale is confirmed"; that the North American Realty Company bid the sum of $11,000.00 in cash for the property which bid was the highest and best cash offer made for the property unless the plaintiff purchaser intends to pay for its bid for said property in cash.

There is an affidavit by J. W. Bullock, President of Flagler Finance Corporation, in support of the facts alleged in the objections, but also states that the solicitor for the plaintiff announced at the sale that the mortgage did not constitute a lien on any personal property located in the building upon the land described except such as had been owned by A. L. Sammons and wife, the mortgagors, at the time of the mortgage and personal property that had been purchased and installed by them in the building.

There was a motion to strike the objections, one ground being that the objector was not a party to the cause and if it is a benficiary it is represented by the complainant who was Trustee for the bondholders. That motion was followed two days later by one for confirmation of the sale.

An order was made on motion by complainant that J. H. Therrell as Liquidator of the Trust Company of Florida be substituted as complainant in place of the Company.

The Chancellor sustained the motion, to strike the ob-

jections to the Master's report of sale. The Master's report of sale was then amended by him to show that at the sale only the fixtures, furnishings and furniture located in the building purchased by the mortgagor and placed therein were sold.

The North American Realty Company then interposed an objection to the confirmation of the sale supported by the affidavit of J. W. Bullock, President of the Corporation, in which he affirmed that prior to the sale J. Warren Smith, agent for Therrell as Liquidator, said to Bullock that Therrell had no money with which to pay the costs or expenses of the suit or to pay the bondholders their pro rata share of any bids made by him at the sale and that if it became necessary to "raise money for said purpose" the Liquidator would have to ask the court to offer the property for sale to other parties for cash; that the property was in need of repairs; that the Liquidator had no money with which to make repairs and unless the property was repaired it would rapidly deteriorate and become of less value; that the insurance against loss by fire and wind storm would be cancelled on confirmation of the sale and the Liquidator has no money with which to pay the insurance premiums; that as the mortgage does not encumber the personal property and furnishings in the hotel the owner of it will remove the furniture if the sale is confirmed. It was alleged that in such case the hotel could not be operated as there was no money available in the hands of the Liquidator to refurnish the hotel nor did he have authority to do so; that the State, County and City taxes on the property had not been paid for the year 1931 and the Liquidator was without means to pay the same; that if the sale is confirmed the North American Realty Company will not be paid in cash for the bonds held by it, its pro rata of the

amount for which the property was sold, but would be required to take its pro rata in the form of an interest in the property as a "joint tenant," or otherwise, with other bondholders and it will be deprived of its property by the sale of it for taxes, as the Company had no way of compelling other bondholders to contribute money to the payment of taxes or the upkeep of the property.

The North American Realty Company prayed that the court would set aside the sale and order another to be made to the "highest bidder for cash, with permission to any of the holders of the bonds secured by said mortgage, to bid thereat, and to credit on their said bonds the pro rata value of the bonds held by them, paying the balance of their said bids in cash."

The Chancellor confirmed the Master's report of the sale on September 20, 1932. Then Roscoe Martin was by order of the court made a party plaintiff in the cause as substitute Trustee.

The Flagler Finance Corporation and North American Realty Company took their appeal from the order of September 16th striking their objections to the confirmation of the Master's sale and from the order of September 20th confirming the Master's report of the sale.

The above lengthy statement is made to show as well as may be the circumstances in which the sale was made and the interest of the parties and the manner in which the point presented here for determination is made.

The mortgage upon which foreclosure proceedings were brought was given to secure certain bonds of which one hundred and thirty-nine were issued and disposed of and nine were paid. The complainant Trustee has one hundred and eight of the bonds. See Sammons v. Trust Co. of Florida, first case, *supra*. The Flagler Finance Corpora-

tion has seven of the bonds which leaves fifteen of the bonds, denominations unknown, unaccounted for. The Trustee which was the Trust Company of Florida has become bankrupt and a Liquidator, an officer of the Comptroller's Department, took possession of the assets and charge of the trust properties committed to it. See Power v. Amos, 94 Fla. 411, 114 South. Rep. 364; Power v. Chillingworth, 93 Fla. 1030, 113 South. Rep. 280; Campbell v. Vining, 101 Fla. 939, 133 South. Rep. 555; Wasson Bond & Mortgage Co. v. Therrell, 113 Fla. 140, 151 South. Rep. 497.

A successor Trustee was named by the court so the administration of the Trust devolves now upon an officer of the court and not upon the representative from the Comptroller's office.

At the sale which was ordered to be made at public outcry to the highest and best bidder for cash the Liquidator bid twelve thousand dollars for the property, but he has no money in his hands to pay the price bid, nor has he any money with which to pay the costs of the proceedings and solicitor's fees and expenses of sale. No authority exists in the trust deed for an assessment by the Trustees upon the bondholders to pay the costs and expenses of the sale. The mortgage was given to secure an indebtedness aggregating $60,000.00. Nine bonds have been paid and twenty-two are outstanding in the hands of investors including the seven owned by the Flagler Finance Company.

The Master's report states that "out of the amount so bid for said property, if and when this report shall be confirmed, I will disburse and pay the sum specified in said decree." The decree allowed the sum of four hundred dollars as compensation for the Trustee. See Sammons v. Trust Co. of Florida, first case, *supra*. There are court

costs to be paid and expenses of sale including Master's fees and in all likelihood a solicitor's fee allowed in the foreclosure proceeding.

Although this Court stated in the first opinion that "bonds are the equivalent of cash" in cases like this, the statement is not accurate insofar as they are available for the payment of solicitor's fees, court costs and expenses of the litigation.

In the case of Scott v. Kirtley, decided December, 1933, 113 Fla. 637, 152 So. 721, this Court held that a solicitor may maintain a bill in chancery to establish a lien upon lands which were procured by him to be set off to his client. Under the authority of that case the solicitor employed to foreclose the mortgage in this case may resort to that remedy to enforce his lien upon the lands so purchased at the sale by his client for the bondholders. A debt would exist against the Trustee for the costs and expenses incurred in the foreclosure which would have to be satisfied if at all out of the assets in his hands belonging to the *cestuis que trustent*. Thus more litigation and court costs and attorney's fees would be incurred than would be in some cases, and possibly in this case, compensated for by the difference between a sum bidden to be paid in bonds and the cash bidden for the property.

The court may exercise discretion in approving a sale of land under its decree and may considering the circumstances determine that as between two bids made for property the smaller is the better bid. The officer may reject the highest bid for substantial reasons. 3 Jones on Mortgages (8th Ed.) Sec. 2099; 16 R. C. L. 67. The court may confirm or not in its sound discretion. See 16 R. C. L. 81-86.

As a general rule the Master making a sale of property

has no right to refuse to accept a bid except the bidder will not give the bond with good security required by an order of sale. The Master generally is bound to accept all bids and to knock the property off to the highest bidder. Morton v. Moore, 4 Ky. L. Rep. 717.

The appellants in this case have their standing in court as objectors to the confirmation of the sale on the ground that one of them, the Florida Finance. Company, was a party to the suit and the other, the North American Realty Company, was a bidder at the sale whose bid was rejected.

The general rule as above stated that the Master is bound to accept all bids and to knock the property off to the highest bidder is subject to some exceptions, one of them is that where the person who has made the highest bid is unable or refuses to give security for the amount of his bid when lawfully requested so to do, or who having no ostensible means of paying the purchase money, may yet be tempted to bid over everyone else from an idle hope of being able to pay. 16 R. C. L. 67.

A *bona fide* bidder at a judicial sale who is able to comply with his bid is entitled to appropriate redress where his bid is arbitrarily disregarded by the officer conducting the sale. He may not be entitled to have the property even though his bid is the highest, but he may come into equity and compel a resale to be started at the point of his bid, and in case no higher bid is made he is entitled to have the property knocked off to him. See 16 R. C. L. 67.

Now if the Trustee who made the higher bid is confessedly unable to comply with it by producing the requisite amount of money to pay his bid, then the North American Realty Company which bid the next highest amount and is able to comply with its bid by producing the money necessary to pay it is entitled to a resale of the property to begin

at the price bid by it and if there is no higher bid then to have the property knocked off to it.

If a bidder at a judicial sale purports to act as the agent for another but cannot produce satisfactory evidence of such agency his bid may be rejected. See Gray v. Viers, 33 Md. 18.

If the bid is accepted but the agent is unable to produce confirmation of his action in bidding more than his principal authorized him to bid for the property it follows that the court may refuse to confirm the sale.

Now it affirmatively appears from the record by the affidavit of Mr. Bullock that the Liquidator in place of the defunct Trust Company of Florida, Trustee, had no money with which to pay costs and expenses of the suit or to pay the bondholders their pro rata share of the bid made, that he had no money for repairs in which the property, a hotel, stood greatly in need, or to renew insurance upon it, nor any money to furnish the hotel to be used for the purposes for which it was designed, nor with which to pay taxes, and the property will have to be sold to satisfy the lien.

There is nothing in the record to show that the Trustee was empowered by the terms of the trust deed to foreclose the deed to satisfy the lien of the bondholders, to appear for them at the foreclosure sale and use their bonds in whosesoever hands they may be to pay the price bid and apportion the amount pro rata among the bondholders and demand of them a sufficient sum in proportion to their holdings to pay the costs and expenses of the foreclosure proceedings; but on the contrary it affirmatively appears that the North American Realty Company, the holder of seven bonds of the par value of thirty-five hundred dollars

expressly refuses to allow and give to the Trustee any such power.

It is very doubtful whether in certain cases like the one at bar such a provision in the trust deed would enhance the saleability of the bonds. It would be more likely to seriously impair the sale of the bonds, because while a purchaser of such securities willing to invest upon his belief in the security pledged and earning. capacity of the enterprise behind it, might be unwilling in lieu of his bond to take an undivided proportional interest in the real estate and become a tenant in common with possibly several hundred others and have to pay out more money to secure such interest.

It follows therefore that the Trustee purporting to act as agent for the bondholders in bidding for the property had no power of agency to do so, that his bid for them was without authority and he had no power to call upon the bondholders for the payment by them of their pro rata share of the costs and expenses of the foreclosure proceedings and had no power as their agent or representative to subject the property purchased to the payment of such expense unless those powers may be inferred from the terms of the trust deed in which the Trustee was named.

The contract rights of the bondholders are fixed by the terms of their bonds and the deed by which payment of them is secured. The bonds in this case are payable in money and when the mortgage was foreclosed the holders of these bonds were entitled to be paid their pro rata of the proceeds of sale after the payment of expenses and costs of the proceedings.

Any purchaser at the sale may use so many of his bonds as may be necessary to pay on the price bid but in such case the value of the bonds turned in by him as the equivalent

of cash is determined by that proportion of the net proceeds of the sale which such amount bears to the indebtedness due, the balance must be supplied by him in cash.

We think that the rule announced in Warner, Harris & Buck v. Equitable Trust Co., 35 Fed. Rep. (2nd) 513, is the correct one which should be applied in a case like the one at bar. In the case of Sage v. The Central Railroad Company, 9 Otto. 334, 25 L. Ed. 394, Mr. Justice STRONG, of the Supreme Court of the United States, speaking for the court in a case where the trust deed contained a covenant to the effect that in case of a judicial foreclosure sale or other sale of the premises embraced in the mortgage the holders of a majority of the outstanding bonds secured by the mortgage may in writing request the trustee to purchase the premises embraced in the mortgage for the use and benefit of the holders of the then outstanding bonds secured by the mortgage, said: "the several bondholders claiming under the mortgage held their interests subject to this *controlling power given* to the *majority of all* the *holders."* (Italics substituted.)

It does not appear that any such controlling power to the trustee exists in the trust deed in this case.

The orders appealed from are reversed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BUFORD, J., concur in the opinion and judgment.

## ON REHEARING.

BROWN, J.—The first appeal in this case was from a final decree in a foreclosure proceeding before sale was had thereunder. With the exception of a direction for modification of the decree as to the amount of interest due, and a reversal of that part of the decree allowing attorney's

fees, with directions that the Chancellor take and consider additional testimony in regard to that matter, and enter such decree with reference thereto as the evidence might warrant, the final decree appealed from was by this Court in all other respects affirmed. See Sammons, *et al.,* v. Trust Company of Florida, 102 Fla. 711, 136 So. 742, decided August 4th, 1931. On this first appeal it appeared that the mortgage executed by Sammons and wife to the Trust Company of Florida, as Trustee, was given in April, 1925, on the Meridian Hotel property in Miami Beach to secure an issue of 139 bonds aggregating $60,000.00, that nine bonds had been paid, twenty-two were outstanding in the hands of investors scattered throughout the country, the possession of which the Trustee had not been able to procure, and that complainant Trustee was only able to file in evidence 108 of the bonds, aggregating $46,800.00. One of the exceptions to the Master's report was that the bonds introduced in evidence were not sufficient to support the finding of the Master that the amount due on principal was $55,937.50, and it was contended that the mortgage could not be foreclosed as to the bonds not offered in evidence. On this point this Court held that the bonds need not be introduced in evidence in the foreclosure suit by a Trustee named in a mortgage securing bonds where the evidence is sufficient to prove that the bonds were valid and outstanding obligations.

The mortgage thus ordered to be foreclosed provided, among other things that the Trustee should hold and dispose of the property for the equal pro rata benefit and security of all persons who were lawful holders of the bonds, without preference of one bond over another; that the Trustee, on default for thirty days in any of the payments of interest or principal when due, might accelerate all the

bonds to maturity, and take possession of the property and sell the same, after four weeks advertisement. And a later paragraph gave the Trustee the power to foreclose in due form of law. The 2nd, 5th and 6th paragraphs of the trust deed in this case are the same as those bearing the same numbers which are quoted from the trust deed involved in the recent case of Smith as Liquidator of the Trust Company of Florida, v. Mass. Mutual Life Ins. Co., 156 So. 498, at page 501. It will be noted that the fifth paragraph gave the Trustee, or any of the bondholders, or any person or persons acting in their behalf, authority to purchase, either under the power of sale therein provided for, or at any sale held pursuant to judicial decree. The bonds expressly made the provisions of the trust deed a part of the bonds.

Said final decree, thus affirmed, provided in general terms that in case of default in payment of the sum ascertained therein to be due, together with the attorney's fees and court costs, the mortgaged property should, after prescribed notice, be sold by the Master at public outcry "for cash to the highest and best bidder," and, after confirmation, out of the proceeds of sale, to pay the said costs and fees, and the remainder to the complainant Trustee up to the amount found to be due on the mortgage, and then to bring any surplus, if any, into court to abide its further orders. Then followed this paragraph of the decree:

"That the complainant, or any of the parties to this suit, severally or jointly, may be bidders for or purchasers of the said premises at the sale thereof. In the event that the complainant or any purchaser acting for the protection of the bondholders shall become the purchaser of said property at the said sale for an amount not greater than the amount herein adjudged to be paid to the said complainant,

the said complainant or said purchaser for the protection of the bondholders shall be required to pay in cash only the amount of costs, charges and expenses hereinabove adjudged to be paid, including the costs thereby incurred in advertising and selling the said property, and the remainder of the bid shall be taken to be a credit on the bonds of the bondholders secured by the mortgage or trust deed foreclosed in this case and on the amounts adjudged to be due under this final decree."

In the opinion on this appeal, which was written by Mr. Justice BUFORD, and concurred in by all the members of the Court, it was said:

"There is some contention that the terms of the final decree are such as to require a bondholder bidding to pay his bid in cash, thus depriving such bondholder of the privilege of using the bonds held by him in part payment of his bid. As we construe the decree it does not preclude a bondholder who is successful bidder for the property to use his bonds to pay their proportionate value of the bid. It appears to be held in the majority of jurisdictions that a bondholder being the successful bidder for property at a foreclosure sale in a suit to enforce the payment of bonds may use his bonds in payment of his bid to the extent of the proportionate value of such bonds as ascertained by the amount realized at the foreclosure sale. That is, if the property sells for enough to pay only 50% of the face of the bonds outstanding then the bonds in the hands of the bidder can be used as part payment at 50% of their face value and this is true whether the decree specifically so provides or not."

This construction follows quite closely the provisions of paragraph 18 of the trust deed. The opinion continues:

"In 14 A. C. J., page 713, it is said:

" 'The foreclosure decree need not require the sale of the corporate property to be for cash. The bonds of the mortgagor corporation may be taken in lieu of cash, as cash, if taken, would be given back again to the bondholders in any event to redeem the bonds. Nor does a provision in the decree that the property be sold, "to the highest and best bidder for cash" affect the rule. "The highest bidder for cash" is construed as meaning "for cash or its equivalent" and bonds in such cases are the equivalent of cash.' "

When the cause was remanded to the Circuit Court, the Chancellor took additional testimony in regard to the matter of solicitor's fees, as directed, and on November 14th, 1931, amended the final decree of January 21, 1929, by correcting the amount of interest and adjudicating the question of complainant's solicitor's fees, in compliance with the opinion and mandate of this Court above referred to. From this amendment to the final decree one of the defendants, Flagler Finance Corporation, the holder of the legal title to the mortgaged property, took an appeal in its name and on behalf of its co-defendants, with supersedeas. On this appeal the action taken by the Circuit Court was, on May 21, 1932, affirmed by this Court. See 105 Fla. 547, 141 So. 743. This left the original decree as thus amended affirmed by this Court and in full force and effect, and these judgments of affirmance became the law of this case insofar as the validity of the final decree as amended was concerned. Palm Beach Estates v. Croker, 106 Fla. 617; 143 So. 792, and cases cited.

When the cause was for the second time remanded to the lower court, the Master, after publication of notice of sale, reported that he had sold the property pursuant to said final decree, on September 5, 1932, to J. H. Therrell as Liquidator of the Trust Company of Florida, who was

by order of Court substituted in the place of the original complainant, the Trustee named in the mortgage, "for the sum of $12,000.00, the same being the highest bid therefor. That upon the confirmation of this report of sale, if the same shall be confirmed, I will execute to said purchaser a Master's deed conveying said property. That out of the amount so bid for said property, if and when this report shall be confirmed, I will disburse and pay the sums specified in said decree and will make a report of the payment of the same to this court and will file receipts therefor."

Flagler Finance Corporation, one of the original defendants, and North American Realty Company, which was not a party to the cause, but the owner of $3,700.00 of the bonds, filed objections to the report of sale. The first objection was that the Master reported that he had sold all the furniture and equipment in the building, whereas he should have reported that he had sold only such property located in the building as belonged to A. L. Sammons and wife, the mortgagors, and which was placed therein by them. The report was later amended to meet this objection, some announcement to this effect having been made at the sale. So this objection was met and requires no further consideration here.

The second ground of objection was that "The Master did not report that he received cash for the sale or in what manner the plaintiff purchaser intends to pay for said property."

We might observe here that the decree above quoted from, did not require the complainant Trustee, on bidding in the property, to pay the amount of its bid in cash, only insofar as the costs, charges and expenses provided for in the decree were concerned, the remainder of the amount bid to be credited on the bonds secured by the trust deed;

and the Master reported that if the sale was confirmed he would disburse and pay the sums specified in the decree and make report of same to the court. This implies that he either had the cash to pay these costs and charges, or what he deemed adequate assurance of it, and if he had failed to make good on this report, the sale could then have been set aside.

The third alleged objection, which was more in the nature of a demand than of an objection, was that the North American Realty Co., as the owner of seven of the bonds secured by the trust deed, aggregating $3,700.00 face value, "demands the right to have its pro rata share of the proceeds arising from said sale distributed to it in cash before said sale is confirmed."

The fourth objection was that said North American Realty Co., had bid the sum of $11,000.00, in cash, for the said property, which bid was the highest and best cash offer made for said property unless the plaintiff-purchaser intended to pay for its bid for said property in cash. We will return to a discussion of these objections further on in this opinion.

The objections were duly sworn to by the president of Flagler Finance Corporation. The said Liquidator of the Trust Company of Florida, who was substituted as party complainant in the place of the said original trustee, moved to strike the objections, on the ground that they were irrelevant and immaterial; that the objector was not a party to the cause, and if it is a beneficiary, it was represented by complainant. This motion to strike the objections was filed on September 10th, 1932. On September 12, 1932, motion for confirmation of sale was filed by complainant, and on September 15, 1932, the North American Realty Company filed an objection to the confirmation of the Master's sale,

asking that said sale be set aside, and another sale be had, "at which the mortgaged property be sold to the highest and best bidder for cash, with permission to any of the bondholders secured by said mortgage to bid thereat, and to credit on their said bonds the pro rata value of the bonds held by them, paying the balance of their said bids in cash."

If the above prayer that the sale be set aside and that another sale be had, at which the property should be sold to the highest and best bidder *for cash;* had been granted, and such a sale ordered, thus limiting the bidding to cash bids, it would have been in plain violation of the terms of the final decree which had been affirmed by this Court, and which the lower court had no power to change; which final decree specifically provided that in the event the complainant Trustee, or anyone purchasing for the protection of the bondholders (meaning. of course, the bondholders in general), should become the purchaser at the sale, and if the bid did not exceed the ascertained mortgage debt due to the complainant Trustee, such complainant, or purchaser for the protection of the bondholders, should be required to pay in cash only the costs, charges and expenses therein adjudged to be paid, the remainder of the bid to be a credit on the bonds of the bondholders secured by the trust deed. So this prayer could not have been granted.

The further prayer, that at the requested resale, any of the bondholders be permitted to bid thereat, and if any bondholder became the successful bidder, "to credit on their said bonds (bids) the pro rata value of the bonds held by them, paying the balance of their said bids in cash," was a right already granted to any of the bondholders, including the North American Realty Company, by the original final decree as construed in the opinion of Mr. Justice BUFORD hereinabove quoted from. So there was no need to set

aside the sale already had and order a new sale on that ground. Indeed, the objecting bondholder had exercised its power to bid, and if its bid had been accepted, the presumption is that the Master would have allowed a credit on such bid for the pro rata value of the bonds held by it, in accordance with such final decree as thus construed. But the Master accepted the higher bid made by the complainant, the statutory Liquidator of the Trustee named in the trust deed, $12,000.00, as against the objecting bondholder's cash bid of $11,000.00. This, we think, presents the controlling legal question involved on this appeal; that is, whether the Liquidator-Trustee was authorized to bid as he did, and the Master was authorized to accept said Trustee's bid, as the highest and best bid under the terms of the final decree, in spite of the bondholder's cash bid of $11,000.00, and whether the Chancellor abused his discretion in confirming the sale so made.

The objecting bondholder attached to and made a part of its said objection to confirmation of sale, filed September 15th as aforesaid, an affidavit by its president, J. W. Bullock, to the effect that one J. W. Smith, a duly authorized agent of J. H. Therrell as Liquidator of said Trust Company of Florida, told him that he, the said Liquidator, and said Trust Company, did not have any money with which to pay the costs of expenses of the suit, "or to pay any of the bondholders their pro rata share of any bids made for said property at said sale by said Liquidator, and that if it became necessary to raise any money for said purpose the said Liquidator would have to ask the court to offer said property for sale to other parties for cash"; that the property was badly in need of repair; that the insurance thereon would be cancelled upon confirmation of sale, and the Liquidator had no money with which to pay for such in-

surance; that if the sale was confirmed the owner would remove the furnishings of the hotel, which were not covered by the mortgage, so that the hotel could not be operated, as the Liquidator had no money with which to purchase furniture, nor any authority to do so under the mortgage; that the taxes for 1931 had not been paid and the Liquidator had no money to pay them, and that if the sale should be confirmed and the objector was not paid the pro rata value of its bonds in cash, but should be required to take a pro rata interest in said property as a joint tenant with other bondholders, it would be deprived of its property by sale of same for taxes, and that this objector had no way of compelling other bondholders to contribute to the upkeep, and maintenance of said property or the payment of taxes.

An order sustaining complainant's motion to strike the objections filed by the North American Realty Company to the confirmation of the sale was made and entered on September 16, 1932.

On September 20, 1932, the Chancellor rendered a decree, finding that the Master's report showed that he had in all respects carried out the orders of the former decree, and in strict conformity to law, and that the sale had been fairly made to said J. H. Therrell, as Liquidator of Trust Company of Florida, as Trustee, and concluded with a decree confirming the sale and directing the Master to execute a deed to said purchaser.

On October 14, 1932, said North American Realty Company filed a petition stating that on September 27, 1932, Roscoe Martin had been, by order of the court, appointed a substitute Trustee in the place and stead of J. H. Therrell as Liquidator, etc., insofar as the trust involved in this cause was concerned, and praying that the court enter an order making such substitute Trustee a party plaintiff in the

cause, which petition was granted by an order dated October 13th, and duly entered and filed on October 14, 1932.

From the order of September 16, 1932, hereinabove referred to, and the decree of September 20th, confirming the sale, this, the third appeal in this cause, was promptly taken by Flagler Finance Corporation and North American Realty Company, in their own names and those of their co-defendants, the notice of entry of appeal having been filed October 13, 1932.

It was called to our attention on petition for rehearing, that the affidavit of Mr. Bullock, President of the North American Realty Co., as to what the Liquidator's agent, J. W. Smith, told him in regard to the financial ability of the Liquidator, or of the trust estate, to comply with his bid and pay such costs and charges, was based on hearsay, and as the objections, of which the affidavit was made a part, were stricken by the court, the Liquidator of the Trust Company was not required or called upon to offer any evidence to the contrary. While the affidavit referred to states that the agent who made these statements to affiant was the "duly authorized agent" of the Liquidator, the nature and scope of his authority was not set forth, nor does the affidavit expressly allege that said agent was authorized by the Liquidator to make such statements to affiant. Doubtless said J. W. Smith told the affiant exactly what affiant stated in his affidavit, and Smith may have stated the facts as they existed at the time of this statement to affiant, but the court can hardly be said to have abused its discretion in striking the affidavit and in confirming the sale when we consider that in addition to the hearsay nature of the affidavit, the court had before it the report of the Master appointed by the court, expressly stating that if the sale was confirmed, he would make the disbursements

and pay the sums specified in the decree, which of course he could not have so reported unless he had felt assured that the purchaser would make good on his bid.

And if we may consider the affidavits submitted in behalf of appellee in connection with this petition for rehearing, as well as the counter-affidavits submitted by the appellants, and the Master's final report, belatedly filed after this appeal was taken, the purchaser at the foreclosure sale, said J. H. Therrell as Liquidator of the said Trust Company, did in fact pay the amount in cash which was required by the decree, namely, $2,524.13, and the Master disbursed this sum on the day after the sale was confirmed, September 21, 1932, the remainder, $9,475.87, being reported by him as credited on the amount of said final decree.

ᐧ It appears from the counter-affidavits on behalf of appellants that when J. H. Therrell as Liquidator of the Trust Company of Florida, was removed as Trustee, and Roscoe Martin made substitute Trustee, on a bill filed by the North American Realty Co., on September 5th, 1932, and going to final decree September 27, 1932, it was determined by the court that the trust was indebted to said Therrell as Liquidator in the sum of $3,300.00, for advances made, including the said costs of foreclosure, for which he was given a prior lien on the trust property, and the substitute Trustee was authorized to and did borrow that amount on a Trustee's certificate, and used the proceeds to reimburse the Liquidator Trustee so removed, which substitue Trustee's certificate was by the court decreed to be in subrogation to Therrell's claim, and a lien on the said trust property, so foreclosed upon, superior in dignity to all other liens except those for taxes and tax certificates. The decree rendered September 27, 1932, also authorized said substitute Trustee to borrow an additional $2,000.00, for

necessary repairs and insurance, and to issue to the lender his Trustee's certificate.

So it appears from the affidavits submitted by both sides on this rehearing that in some way, the Liquidator-Trustee, J. H. Therrell, after the objections to his financial ability were filed, raised or advanced the necessary money, and actually complied with the cash-payment requirements of his bid at the foreclosure sale, as provided for in the final decree. Thus, neither in the transcript of the record as filed, nor on the affidavits filed in this Court, in connection with the application for rehearing, including the certified copy of the Master's final report, is it made to appear that the court below committed any harmful or reversible error in overruling the objections to the report of sale, or to the confirmation thereof, going to the inability of the Liquidator-Trustee to comply with the cash requirements of his bid under the terms of the final decree ordering such sale. Indeed, in their able brief on this rehearing, counsel for appellants appear to have abandoned this point. The brief begins as follows:

"The question presented by the petition for rehearing in this cause is whether this Court should reverse its previous opinion holding that a trustee under a mortgage given to secure the payment of bonds of the mortgagor has no authorty on a foreclosure sale to purchase the mortgaged land for the benefit of all the bondholders over the objection of one bondholder.

"The opinion was rendered after full opportunity to file briefs and after oral argument. It is predicated on the assertion that the mortgage under which the trustee was acting was the only source of his authority and that the power so to bind objecting bondholders was wanting in the instrument."

After carefully considering the questions raised on this rehearing, and the able opinion of Mr. Justice ELLIS above referred to, the writer's view is that construed as a whole, the mortgage under which the Trustee was acting, some of the provisions of which are hereinabove quoted, made the Trustee the representative of all the bondholders in matters affecting the enforcement· of the security, and gave the Trustee the power to foreclose the same, and to buy in the property at the foreclosure sale for the benefit of all the bondholders, as authorized by the final decree herein, provided, of course, no bondholder, or other person, appeared at the sale and presented a higher and better bid. The mortgage, or trust deed, expressly gave the Trustee, or any of the bondholders, or any person or persons acting in their behalf, authority to purchase at the foreclosure sale. And when the trust deed gave the Trustee this power, it must have meant that the Trustee should exercise it for the equal benefit of all the *cestuis que trustent*—the bondholders as a whole—and not for its own private gain, or for the benefit of any particular bondholder. The second paragraph of the trust deed provided that the said property, subject to the conditions and agreements therein contained, "shall be held and disposed of by the Trustee for the equal and pro rata benefit and securing of all the persons who shall be the lawful owners of said bonds without preference of one bond over another."

Would it not constitute a preference of one bond over another to allow the objection of one bondholder, or the demand that he be paid his pro rata share of the bid in cash, to destroy the right of the Trustee to purchase the trust property at foreclosure sale for the benefit of all the bondholders, at which sale the Trustee was the highest bidder? Certainly it would, if the trust deed, and, as here,

the decree of sale also, gave the Trustee the right to pur-chase at the foreclosure sale for the benefit of the bond-holders, and to pay in cash only the foreclosure costs, and credit the balance on the bonds. As each of the bonds thereby secured made the provisions of the trust deed a part of the bond, and as the provisions of the trust deed showed the power of the Trustee to act as the representa-tive of all the bondholders in the enforcement of the se-curity (including the non-enforceable power to take pos-session without foreclosure and administer the property for their benefit), the objecting bondholder took his bond sub-ject to these powers of the Trustee so far as they were legally enforceable and has no right to object to his proper exercise of such powers.

But this question had already been settled, as I see it, by the two previous decisions of this Court, affirming the final decree, which dealt with this very question, as shown by the quotation therefrom hereinabove made. This became the law of the case. The foreclosure sale was made under this very decree. There is, and could be, no appeal in this case from the final decree. It still stands affirmed. So that decree, as construed and affirmed by this Court, became the law of the case. And, as so construed, it protected both the Trustee, acting for all the bondholders, and any indi-vidual bondholder who might desire to bid at the sale, giving the former the power above mentioned and the latter the right to use his bonds to pay their proportionate value of his bid.

But the objecting bondholder in this case insists that by thus giving the Trustee the power to use all the bonds, in-cluding the objector's bonds, in complying with his, the Trustee's bid, the Trustee only having to pay in cash the foreclosure costs, while the objecting bondholder would

have to pay all of his bid in cash excepting the pro rata value of his bonds, put him at a disadvantage in bidding against the Trustee. If so, he agreed to this in advance by purchasing and accepting a bond which expressly made all the provisions of the trust deed a part of the bond. And if the Trustee, as was the case here, outbids the individual bondholder and becomes the purchaser, and acquires possession of the mortgaged property, he does so for the equal pro rata benefit of the objecting bondholder, along with all the others; whereas if the objecting bondholder had outbid the Trustee, he would have become the sole owner of the property, and entitled to the entire profit that might arise from the income-producing power of the hotel, if any, and also entitled to the entire possible profit that might arise from a resale of the property when values again increased or returned to normal. No other bondholder would share therein. Not so with the Trustee. All such profits as the Trustee might make, either by the use or resale of the property, after deducting any advances for necessary expenses, and his compensation for services under the terms of the trust deed, would go to the bondholders as a whole, and the objecting bondholder would get his pro rata share. This power of the Trustee to use the bonds of all the bondholders in complying with his bid, by crediting the amount of his bid on the bonded, or mortgage debt, is a necessary result of his relation as Trustee under the trust deed securing all the bonds, and it becomes especially valuable to the bondholders that he should have this power to prevent a sacrifice of the mortgaged property when foreclosure takes place at a time when values are abnormally depressed. It is a matter of common knowledge that property rarely sells for its full value at foreclosure sales, even in normal times, and it is also a matter of common knowledge that when

this particular sale took place, in September, 1932, real property, in Florida, had not recovered from the collapse of the boom, and at foreclosure and other forced sales especially, was not selling for anything like its real value.

In the recent case of Smith as Liquidator v. Mass. Mutual Life Ins. Co., above cited, this Court, at page 506, of 156 So., in construing the powers of a Trustee under a trust deed practically identical in its provisions with the one here involved, said: "This provision contemplates that the Trustee, if it purchased at all, should purchase for the bondholders at such judicial sale. The provisions of the trust deed were made a part of each bond. If, as was expressly provided, the Trustee was authorized to purchase the property at judicial sale, circumstances might become such that it would be absolute duty to do so, and we think the record in this case, in connection with the judicial notice which we have of the extreme deflation in real estate values which took place after the collapse of the boom of 1925 and the almost total lack of market for real estate which existed in Dade County at the time this sale took place, were such as to make it the duty of the Trustee to bid in and purchase the encumbered property at the foreclosure sale for the bondholders."

In the case of Shaw v. Little Rock & Ft. Smith R. Co., 100 U. S., 605, 25 L. Ed. 757, it was observed in the opinion that: "The Trustee represents the mortgage, and in executing his trust may exercise his own discretion within the scope of his powers."

In Com. v. Susquehanna & Del. R. Co., 122 Pa. 306, 15 Atl. 448, 1 L. R. A. 225, it was said: "When a default occurs, the duties of the Trustee (in a corporation mortgage) become active and important. He represents all the bondholders, and is under obligation to protect them so far

as the property in his hands in trust for them will enable him to do so."

The question of the *implied* power of a Trustee in a trust deed (which of course under our statute is in legal effect a mortgage) to purchase at the foreclosure sale, where the trust deed contains no express authority to that effect, was discussed and a number of authorities bearing on the general subject cited in Smith v. Mass. Mutual Life Ins. Co., *supra.* See pages 508-509, 156 So. See also First National Bank v. Neil, 137 Kan. 436, 20 Pac. (2d) 528, 88 A. C. L. 1252, with note beginning at page 1260, where both in the opinion and the note the authorities are reviewed. It appears that the leading case upholding the existence of such implied power in the Trustee is that of Nay Aug Lumber Co. v. Scranton Trust Co., 240 Pa. 500, 87 Atl. 843, Am. Ann. Cases 1915-A, 235, while the leading case to the contrary is one cited and relied on by the appellants here, viz., Harris & Buck v. Equitable Trust Co., 35 Fed. (2nd) 513, in which it was held that where there was no provision in the trust deed authorizing the Trustee to bid for and on behalf of the bondholders, the court cannot confer such authority on the Trustee. In the note on this subject in 88 A. L. R., 1260, the annotator says: "The few cases which have considered the matter under annotation differ widely in their views, there being good authority on both sides of the question, and no one view being clearly entitled to be regarded as established by the weight of authority, although the doctrine that the Trustee may be authorized to bid in a proper case is followed in more of the jurisdictions which have considered the point. The paucity of decisions may be largely accounted for by reason of the fact that generally express provisions with respect to the Trustee's right to bid are contained in the mortgage."

While we do not consider this question involved in this case, as we·hold that the trust deed in this case must be construed as granting the power referred to, we think certain portions of the opinion in the annotated case of First National Bank v. Neil, *supra,* might well be quoted here, in answer to some of the arguments which have been advanced on the strength of the opinion in the case of Werner, Harris & Buck v. Equitable Trust Co., *supra.* After reviewing the authorities at length, the Supreme Court of Kansas in First National Bank v. Neil, *supra,* closed its opinion as follows:

"Under the deed of trust, it was the duty of the Trustee not to protect one bondholder at the expense of another, but to so conduct its administration of the trust that, so far as possible to accomplish the result, all of the bondholders would be protected to the best possible advantage, and ratably among themselves.

"Default was made by the mortgagor and in performance of its duty, the Trustee brought foreclosure proceedings, and a sale was had at which no bidders appeared at any price, adequate or otherwise. The question of its further duty then confronted the Trustee, which had doubt of the extent of its powers and it filed its motion with the court for instructions and authority, not only as it had a right to do, but as was its duty. Old Colony Trust Co. v. City of Wichita (C. C.) 123 F. 762, 767; 21 C. J. 129; 39 Cyc. 317; 26 R. C. L., 1372, *et seq.;* Pomperoy's Eq. Jur. (4th Ed.) Sec. 1064. The motion informed the court as to the lack of specific authority for it to bid for the benefit of all the bondholders; that in the judgment of the Trustee another sale should be ordered; and that at such sale 'in the event there are no other satisfactory bidders therefor,' it should be permitted to bid an amount not greater than its

judgment and interest, plus costs and unpaid taxes. It also presented the matter of the period of redemption and the effect thereof on the bidding, and that in the opinion of the Trustee it would be 'next to impossible to secure an adequate bid'; and that it was uncertain as to whether or not it had authority to bid for the benefit of the bondholders. These were proper matters for consideration by the court, and its order shows it did consider them.

"What were the rights of the minority bondholders as opposed to the remaining bondholders? While his rights are not in any sense to be ignored, overlooked, or frittered away, can he determine the course of action the remainder must pursue? When he purchased he did so with notice of the recitals of the deed of trust, and knew that he was to share ratably with the other bondholders in payment either by act of the makers of the bonds, or as a result of sale in foreclosure proceedings, or otherwise.

"We are not convinced by the reasoning of Equitable Trust Co. v. United States Oil & Refining Co., and Werner, Harris & Buck v. Equitable Trust Co., *supra,* that, at least under the deed of trust under consideration, the holder of the $100 bond or of eleven $100 bonds can say that he may gamble as he will with his bonds and be the sole judge of whether the Trustee can bid for him or not, and that the court cannot say under all the equities of the case that the Trustee shall bid on behalf of all the bondholders.

"We are persuaded the holding of the Pennsylvania Court in Nay Aug Lbr. Co. v. Scranton Trust Co., *supra,* that there is no good reason why a Trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interest of bondholders, is more reasonable and equitable, and should be followed.

"A positive and definite rule cannot be laid down as to

when the court should make an order permitting the Trustee, under a deed of trust where specific authority is lacking, to bid on behalf of bondholders under terms and conditions the court may fix, as such an order must necessarily depend on the existing facts and circumstances; but on the showing here, and in view of the fact that the property was once offered for sale and there were no bidders, it cannot be said that the court exceeded its jurisdiction or abused its discretion."

In consideration of the foregoing matters on this rehearing and indulging the presumption in favor of correctness which attaches to the lower court's orders and decrees, our conclusion is that it has not been made to appear that the court below erred in overruling the objections filed by the appellants to confirmation of sale, nor in finding in effect that the Trustee's bid was the highest and best bid within the meaning of the final decree, nor in decreeing the confirmation of the foreclosure sale. It follows that our judgment of reversal heretofore rendered should be vacated and the orders appealed from should be affirmed.

WHITFIELD, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—I am unable to agrree with my fellow justices in the conclusion they have reached that the terms of the trust deed empowered the Trustee to purchase the mortgaged property at a foreclosure sale, use the bonds in the hands of the purchasers thereof with which to pay the price bid at the sale, take the title to the property in his name as Trustee, demand of the bondholders an amount of money sufficient to pay the costs and expenses incurred

in the foreclosure proceedings, apportioning the assessment pro rata among them according to their holdings.

The conviction was borne upon me, by the careful examination and analysis of the terms of the trust deed when I prepared the opinion upon the third appearance of the case in this Court, that the Trustee had no power of agency under the terms of the deed to purchase the property for the bondholders whose bonds he did not possess and over the protests of.those owners of bonds who refused to appoint him agent for that purpose; that no authority existed under the terms of the deed to subject the property to the burden of another lien to obtain money to complete the purchase and pay the costs and expenses of the proceedings.

The opinion was filed March 2, 1934. I adhere to the conclusion therein reached. I am convinced that the authorities support the doctrine that the contract rights of the bondholders are fixed by the terms of their bonds and by the deed by which payment of them is secured.

The Supreme Court of the United States, in the case of Sage v. Central Railroad Company, 9 Otto 334, 25 L. Ed 394, in an opinion by Mr. Justice STRONG, so expressed its conviction of that doctrine as I read the opinion. Nothing contained in the opinion in the case of Shaw v. Little Rock and Fort Smith R. Co., 100 U. S. 605, 25 L. Ed. 757, referred to in the majority opinion, is inconsistent with the view above expressed. In that case the question was on the power of the Trustee to begin the suit. The court said, if there are differences of opinion among the bondholders as to what their interests require it is not improper that the Trustee should be governed by the voice of the majority acting in good faith and without collusion, if what they ask is not inconsistent with the *provisions* of his *trust*. The facts of the case are in no wise analogous to the case at

bar. See also Werner, Harris & Buck v. Equitable Trust Co., 35 Fed. Rep. (2d) 513.

See also the dissenting opinion prepared by me in the case of Smith v. Massachusetts Mut. Life Ins. Co., 116 Fla. 390, 156 South. Rep. 498.

The point on which I venture to differ from the majority of the Court has been fully discussed amongst us, and the view entertained by my associates as to the meaning of the terms of the trust deed and the inferences and deductions that may be drawn from them prevails over my views so I can only register my dissent with the regret that I am unable to convince them.

I think that the decision of reversal filed March 2, 1934, should be adhered to and not reversed.