T. W. BROWN and W. H. NELSON v. C. M. WINTON, Chairman, Board of County Commissioners of Sumter County, and ROY CARUTHERS, Clerk and Auditor to the Board of County Commissioners of Sumter County.

197 So. 543
Division B
Opinion Filed March 29, 1940
On Rehearing July 23, 1940

*Carroll W. Fussell,* for Appellants;

*James W. West,* and *J. T. McCollum,* for Appellees.

CHAPMAN, J.—The record here discloses that the citizens of Sumter County and adjoining counties desired to erect or construct and did locate at the town of Bushnell a State Marketing Bureau and a cold storage and precooling plant to be used by the farmers of Sumter and surrounding counties for the sale and disposition of all farm products and live stock. The method of financing the costs thereof as adopted was: the State of Florida contributed toward the cost thereof the sum of $20,713.30; the Federal Government, through the Works Progress Administration the sum of $47,433.52; the County Commissioners of Sumter County obligated itself to pay on the cost of construction of said plants the sum of $5,000.00; while public spirited citizens of Sumter and adjoining counties paid the sum of $2,500.00.

The contract was let for the erection or construction of the plants and considerable progress made thereon, when the suit at bar was filed to restrain the Board of County Commissioners from issuing its warrant therefor in the sum of $1,500.00. The county had previously paid the sum of $1,800.00, on its commitment. The lower court restrained the payment of the sum of $1,500, but at a subsequent date dissolved the restraining order, and on final hearing dismissed the suit as brought by two taxpayers of Sumter County, Florida. An appeal has been perfected to

this Court and the question for decision here is whether or not the $1,500.00 about to be paid by the Board of County Commissioners of Sumter County toward the costs and expenses of the construction and erection of the plants located at Bushnell to be used by the farmers and stock growers of Sumter and adjoining counties is for a county purpose within the meaning of the law.

It is not contended on this appeal that the State Agricultural Marketing Board, under the provisions of Chapter 13809, Acts of 1929, Laws of Florida, or by Chapter 15860, Acts of 1933, Laws of Florida, amending Chapter 13809, *supra,* has not the authority to make the contributions to the costs and expenses of the construction of these plants at Bushnell, neither is the power of the Federal Government acting through the Works Progress Administration challenged, but the only question presented is the legal authority of the Board of County Commissioners to make this contribution out of money raised by taxation.

Section 5 of Article 8 of the Constitution of Florida, among other things, provides that the powers, duties and compensation of county commissioners shall be prescribed by law. In the case of State of Florida, *et al.,* v. Walton County, 93 Fla. 796, 112 So. 630, this Court held that the board of county commissioners of each county are constitutional officers and under the terms of the Constitution their powers and duties shall be fixed and prescribed by the Legislature.

Section 5 of Article 9 of the Constitution of Florida authorizes the several counties, cities and towns in Florida to assess and impose taxes for county and municipal purposes, and for no other purposes, and that all property shall be taxed upon the principles established for state taxation. It will be observed that the several counties of

Florida are restricted and limited to the assessment and imposition of taxes for county purposes and the counties are without power to assess and impose a tax for any purpose other than a county purpose.

It is the contention of counsel for appellants that the payment of the $1,500.00 by the Board of County Commissioners of Sumter County as part of its commitment toward the cost and expense of the State Marketing Bureau of a cold storage and pre-cooling plants located at Bushnell is not a county purpose within the meaning of Section 5 of Article 9, *supra,* and no statute authorized the said gift and therefore the money raised by taxation cannot thusly be expended. Chapter 10104, Acts of 1925, Laws of Florida, makes the costs and expenses for cold storage and drying plants on the part of the several counties of Florida a proper county purpose for which money raised by taxation can be expended. It grants the power to the several counties, not only to erect or construct storage curing and drying plants for the storing of animal and vegetable products, but the several counties of Florida have the authority, through the Boards of County Commissioners, to operate the same after their construction so that the agricultural activities may not only be advanced but fostered and encouraged. Section 13 of Chapter 10104, *supra,* makes it the duty of the State Marketing Bureau to co-operate with persons storing agricultural and animal products in any storage curing and drying plant and to assist in marketing such products to the best advantage and to provide facilities therefor.

It is contended that Chapter 10104, *supra,* is inapplicable to the case at bar because the title to the cold storage and pre-cooling plants has not been taken in the County of Sumter. It will be observed that Section 8 of Chapter

10104, *supra,* provides that the legal title to all cold storage curing and drying plants shall be vested in the State of Florida for the use and benefit of the county wherein said storage and drying plants are located. Our study of the bill of complaint convinces us that no sufficient allegation appears therein as to the title to said property and this question cannot and is not properly presented for a decision in this case.

Section 4 of Chapter 10104, *supra,* provides for and makes it the duty of the county commissioners of a county in which a cold storage, curing and drying plant is to be erected, after plans and specifications therefor have been approved, to deposit with the State Treasurer a sum equal to one-half of the approved estimated costs thereof and for said purpose the county commissioners are authorized to expend any portion of the general county fund not otherwise appropriated and any part of the agricultural fund of said county. We are not sure that the allegations of the bill of complaint now before us are sufficient to show or tender an issue to the effect that the Board of County Commissioners of Sumter County, Florida, do not have the power under Chapter 10104, Acts of 1925, to make the expenditure here questioned.

It is settled law in Florida that a plaintiff must allege in his bill of complaint every fact clearly and definitely that is necessary to entitle him to relief and if he omits essential facts therefrom or states such facts as to show he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. See Morrison v. Braddock, 100 Fla. 1152, 131 So. 124; Barton v. Moline Properties, 121 Fla. 683, 164 So. 551, 103 A. L. R. 725; Flewwellin v. Jeter, 138 Fla. 463, 189 So. 651; Vaughn v. Stewart, 140 Fla. 88, 191 So. 693.

In the case of Cotten v. Leon County Commissioners, 6 Fla. 610, this Court held, when construing Section 4 of Article 8 of the Florida Constitution of 1839, that subscription to stock in a railroad running through a county by the county commissioners thereof, authorized so to do by an Act of the Legislature of 1855, having as its purpose the encouragement of a liberal system of internal improvement, was a county purpose for which funds raised by taxation could be expended.

In the case of Skinner v. Henderson, 26 Fla. 121, 7 So. 464, 8 L. R. A. 55, the City of Tampa made a contract to construct a bridge within the incorporate limits of the City of Tampa across the Hillsborough River. The county commissioners of Hillsborough County appropriated the sum of $4,600.00 toward the costs and expense of the construction thereof and a taxpayer filed suit and contended that the expenditure on the part of the County of Hillsborough was not a county purpose within the meaning of the Constitution. This Court upheld the appropriation as a lawful county purpose. See State *ex rel.* Garrison v. County Commissioners of Putnam County, 23 Fla. 632, 3 So. 164.

Duval County, under an Act of the Legislature of 1891, was authorized to improve the navigation of the St. Johns River and to issue bonds in aid thereof, the proceeds of the sale of the bonds to be applied to the cost of improving the navigation of the River and removing obstructions therefrom, and these moneys were to be expended within the territorial limits of Duval County. This Court held that said expenditures were a county purpose and did not violate the provisions of the Constitution. See Stockton v. Powell, 29 Fla. 1, 10 So. 688, 15 L. R. A. 42. See also Duval County v. City of Jacksonville, 36 Fla. 196, 18 So. 339, 29 L. R. A. 416; Potter v. Lainhart, 44 Fla. 647, 33 So. 251.

The Legislature cannot authorize the expenditure of money for other than county purposes which has been raised from taxes assessed. The law restricts such expenditure to county purposes and for no other purposes. See County Commissioners of Escambia County v. Board of Pilot Commissioners, 52 Fla. 197, 42 So. 697.

Chapter 6580, Acts of 1913, authorized the County of Duval to issue bonds and to levy a tax to pay the same for the purpose of providing and procuring a site and for the construction and equipment of an armory which was to be located in Jacksonville, Florida. In the case of Jordan v. Duval County, 68 Fla. 48, 66 So. 298, suit was brought by a taxpayer to enjoin the issuance of the bonds upon the theory that the Act violated Sections 1 and 5 of Article 9 of the Constitution of Florida. The lower court sustained a demurrer to and dismissed the bill of complaint and an appeal therefrom was taken to this Court and the same was affirmed here, and the Court, speaking through Mr. Justice WHITFIELD, in part, said:

"While the Constitution provides that 'the Legislature shall authorize the several counties * * * in the State to assess and impose taxes for county * * * purposes, and for no other purposes,' the term 'county purposes' is not defined or amplified in the organic law. This being so the legislative power, in exercising its appropriate lawmaking functions, may determine what is a 'county purpose,' and the courts are not authorized to render such determination ineffectual, unless some provision of the Constitution is violated, or unless the particular enactment can have no legal or practical relation whatever to any 'county purpose.' Where the courts may as in this case enquire into the absence of power must clearly appear before the statute will be declared to be ineffectual for the purpose designed. The

courts are authorized to determine the legality of a statute in appropriate proceedings; but considerations of policy including the necessity and wisdom of a regulation are determined by the Legislature in enacting the statute. As applied to the taxing power that may be conferred upon counties, the organic mandate that 'the Legislature shall provide for a uniform and equal rate of taxation,' does not require that the rate of taxation shall be the same in each and every county, but that all property which is legally taxable for a given purpose, shall be subjected to 'a uniform and equal rate of taxation.' Any authority conferred by law upon a county to impose a property tax must be for a county purpose, and the quoted organic provision merely requires that all property lawfully burdened therewith shall be taxed at 'a uniform and equal rate.'" See Earle v. Dade County, 92 Fla. 432, 109 So. 331.

This Court has held by a long line of decisions that a presumption in equity as well as in law exists as to the correctness of the ruling of the lower court and it is the duty of a party resorting to an appellate court to make the errors complained of clearly to appear. See Flagler Finance Corp. v. Therrell, 118 Fla. 596, 159 So. 868; Atlantic Coast Line R. Co. v. Baynard, 112 Fla. 544, 151 So. 5, Johnston v. Johnston, 122 Fla. 372, 165 So. 698. We have carefully considered the record, briefs of counsel and the authorities cited, and fail to find error in the record.

The order of decree apealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## On Rehearing

PER CURIAM.—A rehearing having been granted in this cause and the case having been further considered upon the record and upon briefs and argument of counsel for the respective parties; it is thereupon ordered and adjudged by the Court that the order or decree of the circuit court in this cause be and it is hereby reaffirmed and adhered to on rehearing.

WHITFIELD, P. J., CHAPMAN, BUFORD and THOMAS, J. J., concur.

BROWN, J., dissents.

Chief Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J. (dissenting).—Upon further consideration of this case on rehearing, it appears to me that there is no express statutory authority authorizing the Board of County funds, raised by taxation, the sum of $1500.00 as part payment of its commitment towards the cost and expense of the construction of the State Farmer's Market at Bushnell, Florida, which the bill filed in this case by the appellants alleged "is owned and operated by the Florida State Agricultural Marketing Board." The bill further alleges that the county does not own any interest in said market whatsoever and has no power or control whatever through its county commissioners or otherwise over the operation and control of said market.

It is true, as was pointed out in our former opinion, that in several cases we have held that similar projects have been declared to constitute a county purpose, but in each of those cases there was a statute declaring said project to be a county purpose, or authorizing the county commissioners to spend money therefor. As I read the statutes,

there is no express provision of any of the statutes which makes this particular project a county purpose. On the former hearing, I gathered the impression that Chapter 10104 of the Acts of 1925, made this project a county purpose—if not expressly, by strong implication therefrom. But that statute provides for a different kind of plant or project from that here involved and also provides that it shall be initiated by the county commissioners of the county. That Act provides that whenever the county commissioners of any county shall determine that the problem of storing its products to await favorable marketing conditions is of sufficient importance in such county to warrant the same, they shall have the right to provide for the erection and operation in such county of a cold storage, curing and drying plant for the storing of animal and vegetable products, and to spend public moneys therefor, and the same is declared to be a proper county purpose. It further provides that the county commissioners of such a county, so determining, shall provide detailed plans and specifications of the proposed plant, together with an estimate of the probable cost, and of the probable business to be expected in its operation, and that these shall be submitted to the board of commissioners of state institutions, who shall examine the same, and if they approve, they shall cause their approval to be entered of record and certified to such board of county commissioners; one-half of the cost of such project, if approved, to be paid by the county and one-half to be paid by the State. The legal title to such cold storage, curing and drying plant shall vest in the State for the use and benefit of the county and shall be under the supervision and control of the State through the board of commissioners of state institutions until complete repayment is made to the State by the county of all funds ad-

vanced by the State for the erection of such plant. A county is authorized to raise the necessary funds by the issuance of bonds. The board of commissioners of state institutions is authorized and required to promulgate rules and regulations for the operation of such plant. All employees required for such management and operation of any such plant shall be appointed by the county commissioners, subject to be removed by the board of commissioners of state institutions for incompetency. or neglect of duty. It is also made the duty of the state marketing bureau to cooperate with the persons storing animal and vegetable products in such plants and to assist in marketing such products to the best advantage.

Chapter 13809 provides for the creation of a state agricultural marketing board, to consist of the Governor, the Commissioner of Agriculture and the State Marketing Commissioner. Thus the personnel of this board is different from that of the board of commissioners of state institutions. Section 1 of this Act was amended by Chapter 15860, Acts of 1933, and Section 1 of the original Act as amended by the later Act sets forth the powers and duties of the state agricultural marketing board, among which is included the power to purchase suitable sites and erect thereon assembling plants and properly equip the same for the handling of staple crops, meats, poultry and dairy products; to refrigerate or process such products, and to employ such manager and other help as is necessary to operate the plant and market the materials handled, making such charges for such services as will cover the cost of operation. That the funds necessary to defray the expenses of erecting and equipping such plant or plants shall be expended from the General Inspection Fund. Both the original and the amended Act provide that it shall be the duty of the state

agricultural marketing board to further extend the activities of the state marketing bureau in the organization of agricultural and marketing associations, and to aid, promote and foster those already operating.

It is perfectly plain that this particular project was not constructed under Chapter 10,104, above referred to, and I find nothing in either one of these three statutes which makes this project a county project; nor does it appear that either one of these statutes impliedly constitutes this project a county project. Of course, if this enterprise had been constructed under Chapter 10104, it would be a county purpose, expressly made so by that statute.

Section 17 of Article IV of the Constitution provides that "The Governor and administrative officers of the executive department shall constitute a board of commissioners of state institutions," whereas under the provisions of Chapter 13809, Acts of 1929, as amended by Chapter 15806, Acts of 1933, the State Agricultural Marketing Board is, as above pointed out, composed only of the Governor, the Secretary of Agriculture and the Commissioner of Markets.

It therefore appears impossible for the provisions of the cold storage statute, Chapter 10104, to be in effect where, as here, under the facts as alleged in the bill of complaint, this market is owned and operated by the Florida state agricultural marketing board, and the county commissioners have no ownership, power or control in or over it.

Section 5 of Article VIII of the Constitution provides that: "The powers, duties and compensation of such county commissioners shall be prescribed by law;" and Section 5 of Article IX provides that: "The Legislature *shall authorize* the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes." (Italics supplied.)

It thus appears that the powers of boards of county commissioners are wholly statutory, and that they cannot impose taxes or spend county funds for any purpose other than such as the Legislature has determined to be a county purpose.

It has been suggested that county commissioners have just as much power as the Legislature has to determine what is a proper county purpose, and are in a better position to do so, but in view of the constitutional provisions above set forth I think we must hold, as we have held many times in the past, that the powers and duties of county commissioners are purely statutory and they cannot impose taxes or spend county funds except for county purposes which have been authorized by statute.

It might be plausibly argued that it would be a wise public policy for our Constitution to be so amended as to permit the boards of county commissioners to determine this matter of what constitutes a county purpose, at least in cases where the Legislature has not spoken. As was said by this Court, speaking through Mr. Justice STRUM, in Amos v. Mathews, 99 Fla. 1, 126 So. 308, our Constitution, in a general way, contemplates that performance "of State functions shall be confided to state officers; the performance of county functions of purely local concern shall be confided to county officers. Save as is otherwise clearly contemplated by the Constitution, there can be no compromise with that principle, the origin of which is more ancient than the Constitution itself." But in that same opinion it was said that the powers of county officers are wholly statutory. It is elsewhere said in that opinion that: "The existence of local county officers as a part of our form of government, and for the performance of purely local functions, is clearly recognized by the Constitution, although the Legislature

possesses powers of the broadest possible nature consistent with the constitutional existence of those officers, in determining the extent of their local powers and duties."

But here we are dealing with county aid to what is really a state agency, not a mere local concern, even though it is located within and beneficial to the county, and in order for the county commissioners to contribute to its construction or maintenance, the statutory authority to do so must first be obtained. Until the Legislature has declared a plant of this kind to be a county purpose, in the county where it is actually constructed, the county commissioners cannot act in the manner which this bill sought to enjoin; this, in spite of the fact that the county commissioners may really be in a better position to know and determine what constitutes a county purpose than the Legislature itself. However, I do not think this Court has ever held that the county commissioners are vested with authority to determine that question. All of our cases with which I am familiar have dealt with matters which the Legislature had authorized by statute, and assume that a legislative de.ermination of that question is necessary, and that such determination will be given great weight by the courts, and duly enforced, unless it appears that the matter dealt with has no reasonable relation to any legitimate county purpose.

It is contended by appellees that the Legislature has provided that the county commissioners shall have authority "to build and keep in repair county buildings," and "to provide suitable rooms for county purposes." (Citing Section 2153 C. G. L.) We take it, however, that this plant, the "State Farmers Market," is not a county building in the sense in which that word is used in the statute. Furthermore, the full clause with reference to providing "suitable rooms for county purposes" reads as follows: "And in case there are no public buildings, to provide suitable rooms

for county purposes." That gets us back again to the question whether or not this particular plant constitutes a county purpose. Until the Legislature has so provided, we must hold that the authority of the county commissioners alone to determine this question is not of itself sufficient. This, under our Constitution, is a legislative power which the board of county commissioners cannot exercise.

My conclusion is that our previous opinion and judgment of affirmance should on this rehearing be set aside, and that the decree below should, for the reasons above stated, be reversed.