L. H. COOMBES, as Successor Trustee, *et al.,* v. F. D. WHEELER.

179 Sou. 785.
Division B.
Opinion Filed March 2, 1938.
Rehearing Denied March 30, 1938.

594

*Benjamin E. Carey,* for Appellants;

*Leland Hyzer, Herbert S. Sawyer, Thomas McE. Johnston* and *Evans, Mershon & Sawyer,* for Appellees.

BROWN, J.—This is an appeal from the final decree foreclosing the lien of certain tax sale certificates, the order confirming the Special Master's sale, and the order directing payment of the surplus money arising from the sale.

F. D. Wheeler brought his bill of complaint against the Fluvia Corporation, as record owner of the fee simple title to the property involved in this litigation, Emily Franzen, as holder of a first mortgage thereon, Albert H. Lybyer, as holder of a second mortgage thereon, L. H. Coombes, as successor trustee to the City Trust Co., as holder of a mortgage thereon, James P. Franzen, as holder of two tax sale certificates of the City of Coral Gables thereon for the year 1931, and others, seeking to foreclose the lien of certain tax sale certificates held and owned by complainant, on two lots in Coral Gables, Florida.

Omitting a full preliminary statement of the pleadings and facts of the case, we will proceed at once to a consid-

eration of the controlling questions involved, and the pertinent facts relating to each will be referred to in the course of their discussion.

It is contended, in the first question presented, that the final decree was so inconsistent, repugnant and misleading that a fair sale of the property could not be had thereunder, in that it provided in one part that the property be sold at public auction to the highest and best bidder for cash, while in another part, it provided that upon confirmation of the sale, the purchaser should make payment of the amount of the bid in cash to the Special Master.

The two provisions of the final decree which are said to be inconsistent, repugnant and misleading, are:

"That unless there is forthwith paid to the plaintiff or his solicitors of record the aggregate sum of Two Hundred Fifty-four Dollars and Sixty-one Cents ($254.61), together with all costs of this proceeding to be taxed by the Clerk of this Court, that the real property described in the bill * * * be sold at public auction to the highest and best bidder for cash at the south door of the County Court House, Miami, Florida, upon a legal sales day during the legal hours of sale, and that said lots do be offered separately for the respective amounts herein adjudged to constitute a lien upon each."

"And upon confirmation of such sale the purchaser shall make payment in cash to the said Master of the amount bid at the sale."

Construing these two provisions of the final decree together as a single and complete thought, it will be seen that there is not necessarily any conflict between them. The first part of the final decree complained of, requiring that the property be sold at public auction at a certain time and place, *did not require that the cash accompany the bid,* but

simply decreed that the amount of the bid must be paid in cash as distinguished from other modes of payment, such as by promissory notes, mortgages, bonds and the like. The second part of the final decree complained of, requiring that upon confirmation of the sale of the property, the purchaser must pay the amount of the bid in cash to the Special Master, is not inconsistent with the first provision of the final decree complained of, but is merely explanatory of *the time when the payment in cash is to be made.* These two provisions might properly have been embodied in the same paragraph of the final decree, and in such case they would have been considered as being in harmony with each other. There is no difference in their effect because they are in separate parts of the final decree.

"The court has power to fix the terms of the sale. The ordinary fixing of terms is discretionary and will not be disturbed unless there is clear abuse of discretion." 1 Wiltsie on Mortgage Foreclosure (4th ed.) 839, Sec. 655.

See also Flagler Finance Corporation v. Therrell, 118 Fla. 596, 159 So. 868.

Not only does the court have the *power* to fix the terms of sale, but it also has the *duty* to fix, in the foreclosure decree, the terms and conditions upon which the mortgaged premises are to be sold. See 42 C. J. 150, Sec. 1751.

The court was acting within its proper sphere in ordering that the property be sold for cash to the highest and best bidder, to be paid upon confirmation of the sale. No abuse of discretion is made to appear in the matter.

In addition, the only party who could have been injured by these provisions of the final decree, is Kent Corporation, the next highest bidder at the sale of the property, whose bid, according to the affidavit of its Treasurer, was ready to be paid at the time of making the bid. Kent Corporation is not a party to this appeal and consequently it cannot

raise this question. The rights of the appellant, L. H. Coombes, as successor trustee, who is complaining of this phase of the final decree, have not been adversely affected thereby, because the bid for the property made and accepted was $500.00 more than the next highest bid made by Kent Corporation, which is $500.00 more to be distributed to the rightful claimant or claimants whoever he or they may be. Appellant cannot be heard to complain of any error here.

It is contended, in the second question presented, that the court erred in confirming the sale of the property, because the sale was made under a final decree and notice of sale that the property would be sold for cash, whereas it appears from the Special Master's report of the sale that the successful bidder has not paid his bid to the Special Master, and the next highest bidder is ready, able and willing to comply with its bid by paying cash to said Special Master.

Even if appellant had a right to raise this question, which clearly he has not, because he has not been injured by the ruling of the court in this matter, the answer would be that the court below did not err in confirming the sale. The final decree provided that the property was to be sold to the highest and best bidder for cash, to be paid upon confirmation of the sale. The notice of sale stated that the property would be sold for cash, but did not state when the cash must be paid. The property was sold to James P. Franzen, the highest bidder therefor, for $7,500.00, and the sale was confirmed before the amount of the bid had been paid. We think the court correctly confirmed the sale of the property under these conditions.

It is contended, in the third question presented, that the court erred in determining the rights of the various parties to the surplus, before the price bid for the property had

been paid to the Special Master or into the registry of the court.

The record shows that the Special Master, on October 9, 1935, filed his report of the sale, containing an itemized list of all the expenditures to be paid from the amount bid at the sale, and the exact amount of surplus remaining after the expenditures are taken into account. Thereafter, on October 28, 1935, the court entered its order directing the payment of the surplus to Emily Franzen, the first mortgagee, and its order confirming the Master's sale to James P. Franzen. The record does not directly show that the amount of the bid of James P. Franzen was paid to the Special Master; but the Special Master filed a report, on October 30, 1935, reciting that he had disbursed the proceeds of the sale in accordance with the order of the court. This is sufficient to show that the money was paid to the Special Master and disbursed by him.

Where land was sold to satisfy a final decree foreclosing the lien of a tax sale certificate or certificates, and there was a surplus remaining over and above all costs, fees, and the amounts due under the final decree, and the court entered its order awarding distribution of the surplus before the amount bid at the sale was paid, there was no surplus fund in the custody or control of the court upon which the order could operate. See Gay v. Hudson River Electric Power Co., 190 Fed. 773. However, the court, having jurisdiction of the parties and of the land, could compel the purchaser to pay the money into the custody of the court by paying it to the court's authorized officer, the Special Master, see Sanger Brothers v. Corsicana National Bank (Tex. Civ. App.) 87 S. W. 737, affirmed in 99 Tex. 565, 91 S. W. 1083, or in the event of a failure to pay when required, could order a resale of the property. 2 Wiltsie

on Mortgage Foreclosure (4th ed.) 952, Sec. 740; Townsend v. Johnson, 10 Kan. App. 547, 63 Pac. 25.

However, the record in this case shows that the party who was awarded the surplus, Emily Franzen, receipted for the same to the Special Master. Thus the order to pay the surplus has been obeyed, and no harm could thereafter result to anyone, because the court followed this particular mode of procedure in disposing of the issue. Consequently, since the order has been obeyed, we do not think that the appellant or anyone else has any standing to raise this question now.

It is contended, in the fourth question presented, that the court erred in awarding to the first mortgagee the entire surplus arising from the sale of the property on tax foreclosure proceedings.

The mortgage of the first mortgagee, Emily Franzen, which covered about twenty acres, including the lots in question, contained a provision that the mortgagee would release any lot from the lien of the mortgage upon payment to her of $500.00, provided, however, that she would not be bound to issue the release of any lot, if at the time the request was made the mortgage was in default in any particular.

"Whether or not partial releases can be insisted on after the debt is in default depends upon the interpretation of the agreement for releases, or the construction placed upon them in particular cases by the court." Bailey v. Inman, 105 Fla. 1, 140 So. 783.

The parties had a right to contract in whatever lawful manner they chose concerning the release of particular lots from the lien of the mortgage. Since they agreed that whenever the mortgage was in default, the mortgagee would be under no obligation to release lots from the lien of the mortgage on payment of $500.00 each, and since the mort-

gage was in default at the time of the contest for the surplus arising from the sale of the property, the first mortgagee was under no obligation to accept $500.00 each, or a total of $1,000.00, for the release of the surplus, which had been substituted for the lots, from the lien of the first mortgage.

Neither would the fact that the first mortgagee voluntarily claimed the entire surplus fund, give a junior mortgagee the right to insist that two $500.00 payments, or a total of $1,000.00, representing the release amounts agreed upon in the mortgage, be made to the first mortgagee from the surplus fund, and the surplus be released from the lien of the first mortgage, because the mortgage was in default at that time, and the first mortgagee was under no obligation to release the surplus from the lien of the first mortgage on payment of these amounts.

It is also contended that the court erred in failing to apply the doctrine of marshaling of assets so that appellant, L. H. Coombes, as successor trustee, might participate in part of the surplus.

The first mortgage encumbered about twenty acres of land, which included the lots in question. The junior mortgage of L. H. Coombes, as successor trustee, was never introduced into the record of the case. It is asserted by appellee, Emily Franzen, in her brief, and no reply brief was filed denying the assertion, that the mortgage of L. H. Coombes, as successor trustee, occupies the entire Mortgage Book 788, comprising over 350 pages, encumbering between 12,000 and 14,000 lots, including the lots in question.

It is incumbent on the one asserting the right to have the equity court order a marshaling of assets to seasonably and properly assert that right. 18 R. C. L. 456, Sec. 4. It would seem that to properly assert that right, the one seek-

ing the aid of equity, should put a copy of his mortgage in the record, so that he might have a basis for showing that he had only one fund or security from which his mortgage could be satisfied while the senior mortgagee had several. Failure to place his junior mortgage in the record of the case would seem to be a failure on the part of L. H. Coombes, as successor trustee, to make a showing of the right to have the equity court order a marshaling of assets.

"In a proceeding for the distribution of surplus moneys, there is no room for the application of the doctrine of marshaling securities, whereby a creditor who has a double fund to which he may resort for satisfaction of his debt, and another creditor has only one of these funds, the first creditor will be required primarily to resort to that fund for the satisfaction of his debt over which he has the exclusive control. That rule, of course, implies the right of the creditor with the double fund or security to appropriate both funds if necessary. Therefore a second mortgagee, applying for surplus moneys arising from a sale on foreclosure of the first mortgage will not be compelled to release his lien in favor of subsequent mortgagees, on proof merely that his debt is amply secured by other property on which his mortgage is a lien, no matter how strong or apparently conclusive the evidence may be that such other property is sufficient to pay his claim. The court cannot release a lien without actual payment, merely because the witnesses testify and the referee finds that the holder of the lien has other property of his debtor to which he can resort for the satisfaction of his debt." 3 Jones on Mortgages (8th ed.) 694, Sec. 2174.

It appears, therefore, that the court below correctly ruled that the doctrine of marshaling assets does not apply here, because it is not applied in a proceeding for the distribution of surplus moneys, and also because the senior mort-

gagee and the junior mortgagee each have property other that the lots in question to which they can look for payment of their respective liens, and since the lien of the first mortgage on these particular lots accrued prior in point of time, it must be first satisfied from the surplus before any payment therefrom can be made on the junior mortgage. The entire surplus, being insufficient to fully satisfy the first mortgage, was rightfully paid to the first mortgagee.

No error having been made to appear in the final decree and the several orders appealed from, they are hereby affirmed.

Affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.