PEDRO AND CONCEPCION SALVA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Salva v. Commissioner
Docket No. 9255-91
United States Tax Court
T.C. Memo 1993-90; 1993 Tax Ct. Memo LEXIS 90; 65 T.C.M. (CCH) 2080; March 16, 1993, Filed *90 R determined deficiencies and additions to tax against Ps in part on account of $ 600,000 of discharge of indebtedness income realized to P's wholly owned S corporation. R contended that the income resulted from cancellation of a mortgage note occurring upon the filing of two satisfactions of mortgage by the S corporation's mortgagee-creditor, releasing two of three properties mortgaged as security for the note and professing discharge of the underlying liability. R's determinations also took into account $ 43,980 of income flowing from a payment to that S corporation. Ps argued that, under Florida law, the $ 600,000 note was never discharged and that the $ 43,980 payment constituted a bona fide loan. 1. Held: $ 600,000 of discharge of indebtedness income was recognized to the S corporation since, under the facts and circumstances presented, the filing of a satisfaction of mortgage by the mortgagee-creditor with respect to two of three properties securing the underlying note had the effect, under Florida law, of discharging that note. 2. Held, further, $ 43,980 of income was recognized to the S corporation since the payment in issue was not a bona fide loan. *91 3. Held, further, secs. 6653(a)(1)(A) and (B) and 6661, I.R.C., additions to tax are sustained for the year in issue. For petitioners: Joaquin N. Fernandez. For respondent: James P. Dawson. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: By notice of deficiency dated March 12, 1991, respondent determined a deficiency and additions to tax for petitioners' 1987 taxable year as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
$ 237,821
$ 11,891
50% of interest
$ 59,455
payable on any
underpayment
attributable
to negligence
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After a concession by petitioners, the issues remaining for decision are: (1) Whether $ 600,000 of income from discharge of indebtedness was recognized to petitioner Pedro Salva's wholly owned S corporation during 1987, (2) whether $ 43,980 received by that corporation during that year and characterized by petitioners as loan proceeds constituted an item of gross income, and (3) whether *92 the additions to tax for negligence and substantial understatement of income tax liability should be sustained. Background
Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife who, for their 1987 taxable year, made a joint return of income, computed on the basis of a calendar year. At the time the petition in this case was filed, petitioners resided in Key Largo, Florida. Hereinafter, when used in the singular, the term "petitioner" refers only to petitioner Pedro Salva. At all times here relevant, petitioner was the sole shareholder of Zule Investments, Inc. (Zule), a Florida corporation. Zule is an S corporation, making its return on the basis of a calendar year. [1] Zule was organized to purchase, sell, and develop real estate in southern Florida. *93 1. The $ 600,000 Note
On a single day in 1984, Zule purchased three parcels of real property in Dade County, Florida. Those parcels were (1) the Miami property, (2) the Hialeah property, and (3) the Trojan Park property. The total purchase price was $ 1,015,000. Zule financed a portion of the purchase price by borrowing $ 600,000 from Barnett Bank of South Florida (Barnett Bank). Barnett Bank received Zule's note (the Zule note) in that amount, which note was secured by mortgages on the three properties. Mario Velasquez Chizmar (Velasquez) is a close friend and business associate of petitioner. On November 21, 1984, Velasquez purchased the Zule note from Barnett Bank for $ 600,000 and was assigned the bank's interest in the three mortgages securing that note. Zule made no payments on the note to Velasquez after February 1, 1987, when the outstanding principal balance of the note was in excess of $ 595,000. Velasquez has instituted no action to compel payment of the Zule note. In December 1986, Zule sold the Hialeah property, and, in January 1988, Zule sold the Trojan Park property. On November 17, 1987, Velasquez filed two documents entitled "Satisfaction of Mortgage" *94 with the Circuit Court, Dade County, Florida. One such document was with respect to the Hialeah property and the other was with respect to the Trojan Park property. Each document consisted of a standard legal form, "Satisfaction of Mortgage" (RAMCO Form 22 1/2), to which certain information had been added. At the top of each form, above the words "Satisfaction of Mortgage", the word "partial" is added. By each document, Velasquez acknowledged full payment and satisfaction of the Zule note and the appropriate mortgage deed. The documents directed the Clerk of the Circuit Court to cancel the note and mortgage deed of record. Velasquez received nothing in consideration of his execution of the two documents in question. 2. The $ 43,980 Payment
In June 1987, Zule received from Joaquin Fernandez (Fernandez), petitioners' counsel in this case, $ 43,980. That amount was entered in Zule's books as a liability to Fernandez. No other writing evidences that transaction. No provision was made for the payment of interest and no security for repayment was demanded or given. There have never been any payments of either principal or interest made to Fernandez, and he has taken no *95 action to secure repayment of the funds from either Zule or petitioner. Discussion
As a preliminary matter, we note that the substantive tax questions here presented (whether income was realized to Zule on account of (1) a discharge of indebtedness and (2) the receipt of $ 43,980) concern, in the first instance, the gross income of Zule (an S corporation). To the extent that we sustain any increase in Zule's gross income for 1987, the parties agree that such increase will flow through to petitioners and increase their gross income for 1987 pursuant to section 1366. With that in mind we proceed to a discussion of the issues in the case. 1. The Zule Note
Section 61(a)(12) provides that gross income includes income from the discharge of indebtedness. Thus, gross income may be realized to a taxpayer who purchases his obligations at less than their face value. Sec. 1.61-12(a), Income Tax Regs. Here, respondent's position is that Zule was released of its obligation to pay the Zule note in a situation that did not constitute a gift or other circumstance that would excuse Zule from having gross income realized to it. Petitioners' only defense is that Zule was not discharged *96 of its obligation. To determine whether Zule was discharged of its obligation, we must determine the consequences of the two satisfactions of mortgage executed by Velasquez with regard to the Hialeah and Trojan Park properties. If a consequence was to discharge the Zule note, then gross income must be realized to Zule on that account. Necessarily, we look to Florida law to determine the consequences of the two satisfactions. a. Florida law
It is well established under Florida law that: A solvent mortgagee has the right to release and cancel a mortgage and note made to and held by him at any time he sees fit to do so, even though the mortgage debt has not been fully paid * * *
Jackson v. Parker, 153 Fla. 622, 15 So. 2d 451, 460 (1943). It is also well established under Florida law that: when the owner of a mortgage complies with the * * * [relevant] statute and satisfies of record a mortgage, it is prima facie evidence of the payment of the debt, the cancellation of the mortgage of record and a discharge of the mortgaged premises from the mortgage lien.
Biggs v. Smith, 134 Fla. 569, 184 So. 106, 107 (1938). *97 Indeed, the Florida Supreme Court has applied the principle that satisfaction of a mortgage is evidence of discharge of the debt secured by the mortgage and held that, where two properties are mortgaged as security for a single liability, satisfaction of record of the mortgage on one property will be construed as satisfaction of the mortgage on the second. Matheson v. Thompson, 20 Fla. 790, 798 (1884). On the other hand, the parties to a mortgage may agree to the release of particular lots from the lien of the mortgage. Coombes v. Wheeler, 131 Fla. 593, 179 So. 785, 788 (1938). Here, the question is whether acts giving rise to the release from mortgage liens of less than all of the properties securing a common debt have the consequence of discharging the common debt or only of releasing the property subject to the canceled mortgages. The intent of the parties controls. Cf. Jackson v. Parker, supra at 459; Biggs v. Smith, supra; Cooper v. Wolkowitz, 375 So. 2d 1099, 1101 (Fla. Dist. Ct. App. 1979). b. Analysis
*98 We must determine whether Velasquez, in releasing the Hialeah and Trojan Park properties from the liens of mortgage held by him, intended also to discharge Zule of its debt under the Zule note. Respondent says yes, while petitioner says no. Each party advances in support of that party's position the standardized forms of satisfaction of mortgage (RAMCO Forms 22 1/2) executed by Velasquez with respect to the two properties in question. Petitioners emphasize the word "partial" added before the caption "Satisfaction of Mortgage" at the top of each form. That alteration, argue petitioners, gives a clear indication of Velasquez's intent to release only the Hialeah and Trojan Park properties from the lien of mortgage, while retaining his rights under the Zule note itself, as well as the security interest in the Miami property. Respondent, on the other hand, points to the language of the forms that reads: "[The mortgagee] * * * hereby acknowledges full payment and satisfaction of said note and mortgage deed, and surrenders the same as cancelled, and hereby directs the Clerk of the said Circuit Court to cancel the same of record." Respondent points out that, although petitioner made *99 other changes to the forms, he failed to modify that portion that indicated not only satisfaction of the mortgage but also discharge of the underlying liability. Thus, argues respondent, the Court should conclude that it was Velasquez's intent not only to cancel the mortgages in question but also to discharge the Zule note in full. The forms in question are ambiguous, and we are unable to resolve the question of Velasquez's intent from those documents alone. Thus, we must consider other factors. Zule's failure to make any payments to Velasquez on the Zule note after February 1, 1987, is consistent with a discharge of Zule's obligations under that note, as is Velasquez's failure to demand payment or to seek to enforce Zule's obligation thereunder. Of course, Velasquez could have agreed in 1987 to restructure Zule's obligation under the Zule note, temporarily suspending Zule's obligation thereunder to make payments. There is, however, no evidence of any such restructuring. Petitioner testified that Zule failed to make any payments after February 1, 1987, simply because it did not have the money to make any such payments. Petitioner explained Velasquez's failure to attempt *100 collection as based on Velasquez's continuing relationship with petitioner and Velasquez's confidence that, in other dealings with petitioner, Velasquez would make money. Petitioner testified in particular about a contract that one of Velasquez's companies had obtained to construct housing for the United States Army in Panama. Petitioner testified that, in connection with that contract, he was to receive money in an amount in excess of the "mortgage". Petitioner did not make clear what services were to be performed to earn that money or whether it was he (petitioner), Zule, or some other entity that was entitled to such money. Petitioner testified that the Panama contract was not completed and was canceled by the United States Government in 1988. Petitioner's testimony explaining Velasquez's failure to attempt collection on the Zule note was unconvincing, and we accord it no weight. Clearly, if things were as petitioners claim them to be, Velasquez might have provided testimony valuable to petitioners. Such testimony could have shed considerable light on the circumstances surrounding the form mortgage satisfactions and could have provided corroboration for petitioners' contention *101 that no discharge of the Zule debt was contemplated. We have long adhered to the rule that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that, if produced, such evidence would be unfavorable. Recklitis v. Commissioner, 91 T.C. 874, 890 (1988); Davis v. Commissioner, 88 T.C. 122, 143 (1987), affd. 866 F.2d 852 (6th Cir. 1989); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We have applied that rule to the testimony of persons in business dealings with a taxpayer who could corroborate the taxpayer's version of events. See, e.g., Recklitis v. Commissioner, supra (taxpayer's failure to introduce testimony of "lender" to confirm bona fides of a claimed loan held against taxpayer). We thus take a negative inference from petitioners' unexplained failure to have Velasquez testify. [2] We infer that he would have testified that the Zule note was discharged *102 in 1987. [3]
Combining the ambiguity of the mortgage satisfactions, Zule's failure to make any payment on the Zule note after February 1, 1987, Velasquez's failure to demand payment thereon or to seek to compel such payment, petitioner's unsatisfactory explanation of Velasquez's conduct, and the negative inference we draw from Velasquez's failure to testify, we find that Velasquez intended to discharge Zule of its debt under the Zule note in 1987. c. Conclusions
We conclude that, under Florida law, Zule was discharged of its obligation *103 under the Zule note in 1987. For that reason, we sustain respondent's determination based on the realization of income from discharge of indebtedness to Zule in 1987. 2. The $ 43,980 Payment
Respondent and petitioner disagree as to whether the $ 43,980 received by Zule from Fernandez during 1987 constituted bona fide indebtedness, so as to be excludable from Zule's gross income. Petitioners insist that, with regard to such receipt, a bona fide debtor-creditor relationship existed between Zule and Fernandez. Respondent insists that it did not. a. Law
As we have said: Whether a bona fide debtor-creditor relationship exists is a question of fact to be determined upon a consideration of all the pertinent facts in the case. An essential element is whether there exists a good-faith intent on the part of the recipient of the funds to make repayment and a good-faith intent on the part of the person advancing the funds to enforce repayment. * * * The judicial ascertainment of someone's subjective intent or purpose motivating actions on his part is frequently difficult, and his true intention is to be determined not only from the direct testimony as to intent but from *104 consideration of all the evidence. In determining such question an essential consideration is whether under all the particular facts and circumstances there was a reasonable expectation of repayment in light of the economic realities of the situation. [Citations omitted.]
Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970). Some objective factors commonly considered by courts in ascertaining the bona fide character of loans are: (1) The existence or nonexistence of a debt instrument; (2) provisions for security, interest payments, and a fixed repayment date; (3) whether or not repayments of the loan were made; (4) the taxpayer's ability to repay the loan; (5) the borrower's receipt of compensation; and (6) the testimony of the taxpayer. Frierdich v. Commissioner, T.C. Memo. 1989-393 (and cases cited therein at n.4), affd. 925 F.2d 180 (7th Cir. 1991). Petitioners bear the burden of proof. Rule 142(a). b. Analysis
After an examination of all the facts and circumstances we find that the payment in question was not a bona fide loan. Petitioners contend that the payment from Fernandez *105 was a loan, that petitioner intended to repay it, and that, in fact, he made some payments to Fernandez with respect to the "loan". [4] Petitioners, however, have introduced no evidence beyond petitioner's testimony and the circumstance that the payment was carried on Zule's books as a loan, to buttress their contentions. Other than the book entry, there is no documentary evidence supporting the existence of a bona fide loan. The loan was not evidenced by any kind of written agreement, there apparently was no security either demanded or furnished, and there was no evidence introduced as to any remedies Fernandez had negotiated with petitioner in case of default. Moreover, petitioners introduced no checks, bank drafts, or other evidence to confirm the payments allegedly made on the loan. Not only did the loan include no fixed payment dates or provisions for interest payments, but petitioner concedes that the loan had no business purpose. Finally, petitioners admit that although the loan has not been fully satisfied, Fernandez has made no attempts to secure its repayment. *106 c. Conclusion
We cannot explain Fernandez's advance of $ 43,980 to Zule. Petitioner's testimony with regard to that advance was unsatisfactory. He conceded that there was no specific time that a repayment was due and that no interest was to be charged. We cannot conclude from petitioner's testimony that he had any intent to repay Fernandez or that Fernandez had the intent to be repaid. There being no other persuasive evidence of a debtor-creditor relationship, we conclude that petitioners have failed to carry their burden of proof. As previously stated, we find for respondent on this issue. 3. Additions to Tax
Respondent determined additions to tax under section 6653(a)(1)(A) and (B) for negligence and under section 6661 for substantial understatement of income tax liability. Petitioners have not on brief addressed either addition to tax; neither did they at trial direct us to anything in their favor on those issues. Petitioners apparently rely on the hope that they will prevail on the deficiency issues. Given our holding sustaining respondent's deficiency determinations, and in view of the lack of any argument by petitioners refuting the propriety of the additions *107 to tax, we also sustain respondent's additions to tax under sections 6653(a)(1)(A) and (B) and 6661. Decision will be entered under Rule 155. Footnotes
1. Because it has only a single shareholder, Zule is not an S corporation for purposes of subch. D of ch. 63 of the Internal Revenue Code, which provides for the corporate level determination of subch. S items. See sec. 301.6241-1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003↩ (Jan. 30, 1987).
2. Counsel for petitioners was asked by the Court why Valazquez did not testify. His explanation, in essence, was that there was no need for Valazquez to testify because the obligation of the Zule note, as secured by the mortgage on the Miami property, is self evident.↩
3. That inference is not contradicted by Exhibit 20-T, a letter from Valazquez to an agent of respondent's, which (we agree with respondent) constitutes excludable hearsay. See Fed. R. Evid. 801 and 802↩.
4. The term "loan" is used descriptively to refer to petitioners' characterization of the payment in question and has no factual or legal significance.↩